GEORGE S. THOMPSON *vs.* JAMES C. FARGO, treasurer, &c. of the American Express Company.

The plaintiff, acting under a power of attorney from W., received from the United States government money due from the latter to W., and thus became the debtor to W. for the amount. W. directed the plaintiff to send the money, when collected, less charges, to W. care of M., at Terre Haute. No particular method of conveyance being designated, the plaintiff delivered a package containing the amount, in treasury notes, directed to W. care of M. at Terre Haute, to the U. S. Express Company, to be transported. Such package was carried, by that company, to the termination of its route, and there delivered to the defendant to be carried to Terre Haute. It was so carried, but after diligent search, neither M. the consignee, nor W. could be found, and the package was retained by the defendant.

*Held* that as W. had no claim to any particular money, when the plaintiff delivered the treasury notes to the U. S. Express Company, he simply delivered his own property to be forwarded, to discharge his indebtedness to W. And that both the plaintiff and W. had such a title to the property that an action might be maintained by either of them; and a recovery by either would bar an action by the other.

APPEAL from a judgment entered upon the report of a referee.

The action was brought to recover a package of money delivered to the defendants to be transported by them. The facts were these. The plaintiff, on the 11th day of August, 1865, at Springfield, Ill., delivered to the U. S.

Express Company a package containing U. S. compound interest notes and greenbacks amounting to $660.63, directed to John and William White, care of James K. Martin, Bunton House, Terre Haute, Indiana, to be on the delivery of the package to Martin, brought by him to said J. and W. White. The package was carried by the U. S. Express Company to Decatur, Indiana, the terminus of their route, and there delivered to the defendant who carried it to Terre Haute, Indiana. James K. Martin, the consignee at Terre Haute, was not at the Bunton House, nor could he, after diligent search, be found, nor the said John or William White. The package was therefore forwarded to New York city, the principal office of the defendant, in September, 1868. The plaintiff, thereupon, at the city of New York, demanded of the defendant the package, and offered to pay all costs and charges, and indemnify the defendant against the claim of the consignees. The defendant refused to deliver the package, and thereupon this action was brought. The case was referred to John Sherwood, Esq., who found the following facts:

1st. That the defendant, the American Express Company, is a joint stock company consisting of more than seven members, and is engaged in the express business as common carriers, whose principal office is in the city of New York.

2d. That on or about the 11th day of August, 1865, the said American Express Company received from the U. S. Express Company, at Decatur, in the State of Indiana, a package, containing U. S. compound interest notes and 7 3-10 treasury notes, to the amount of $660.63, together with the papers discharging John and William White from service in the army of the United States, being the package described in the complaint, and gave a receipt to the U. S. Express Company therefor. That said package was addressed as follows: "By the United States Express Company, $660.63, John and William White, care of

Capt. James K. Martin, Bunton House, Terre Haute, Indiana."

3d. That the American Express Company conveyed the package in question to the place of destination without delay. That diligent search and inquiry was made for the consignees, but that they could not be found or heard from, nor could any such person as James K. Martin, to the care of whom the package was directed, be found. That the defendants immediately advertised in the newspapers at Terre Haute, that they had received and held the package in question for them the said John and William White.

4th. That the contents of the package in question was the net proceeds of the back pay of the said John and William White, as soldiers in the army of the United States, and their discharge papers from the service, and a letter from the plaintiff. That John and William White had employed the plaintiff as their agent to collect for them the money in question from the United States government. That for this purpose they inclosed to him a power of attorney, and wrote him a letter, which power of attorney and letter were in evidence, and at the same time sent to the plaintiff their discharge papers. That the money in question contained in the package, was the proceeds of a check received by the plaintiff from the government agent at Springfield, Illinois, for the back pay of the said John and William White. That before inclosing the same in the wrapper, the plaintiff had deducted from the amount received by him, the amount he claimed as his charges against the Whites for his services in collecting the money.

5th. That the package in question, directed as aforesaid, had been delivered to the U. S. Express Company, at Springfield, in the State of Illinois, by the plaintiff, on the 11th day of August, 1865, for conveyance and delivery according to the directions of the said package, and a

receipt therefor had been by him taken from that company, which said receipt the plaintiff retained, and has since lost.

6th. That the plaintiff demanded the package in question from James C. Fargo, the treasurer of the defendant, at the city of New York, before the commencement of this action, who refused to deliver the same to him; and that at the time of such demand the said package was at the city of New York in the charge of the American Express Company, and that the plaintiff also offered to pay the defendant all costs and charges, and give him a bond of indemnity.

The referee found, as a conclusion of law, that the plaintiff was entitled to judgment against the defendant for the delivery to him by the defendant of the package described in the complaint, and $156 damages for the detention thereof, and that the value of said package was $816.93.

By the judgment entered upon this report, it was adjudged that the plaintiff recover of the defendant the package and personal property described in the complaint, together with $156 damages for the detention thereof, and the sum of $209.19, his costs and disbursements incurred in this action.

And it was further adjudged, that in the event that said package could not be delivered to the plaintiff, he recover of the defendant the sum of $816.93, the value thereof, and said costs and disbursements; and said damages of $156; in all amounting to $1182.12.

*E. Van Ness*, for the appellant.

I. The rule of law applicable to the facts in this case is stated by *Angell on Carriers*, (§ 502,) as follows: "If, after the carrier has performed his part of the contract, by conveying the goods to the place to which they are directed, it should appear that there is no such person as the one to whom the goods are addressed, then a new contract arises

Thompson *v.* Fargo.

by implication of law, between the carrier and the consignor; the carrier holds the goods as the bailor of the consignor, and is bound to take due care of them and to deliver them to the consignor on being paid his fair and reasonable charges." (*See also Chitty on Carriers, p.* 89.) No case can be found holding a different rule on this state of facts. The referee says he found this case " one of extreme difficulty." The points raised by the defendant below were as follows: 1. " That there is no privity between the plaintiff and the defendant because the defendant received the package of the U. S. Express Company, and gave them a receipt for it." Now it does not appear what kind of a receipt they gave the U. S. Express Company, nor is it material. The directions on the package showed who was the consignor, and to whom the package was directed, and was notice to them that the U. S. Express Company had no interest in the package. The U. S. Express Company only agreed with the plaintiff to forward to the nearest point of destination reached by this company, and they did forward it to Decatur, Indiana, the terminus of their route. The defendant put in evidence a letter from the plaintiff to the defendant, in which the package is described as having been delivered by the plaintiff " to your agent at Springfield;" so that the defendants are the plaintiff's principals in the transaction, and the privity between them is direct. This letter covers the plaintiff's case, and as it is put in evidence by the defendant, is conclusive. " The said package not having been delivered, and the same being the property of the undersigned, you are hereby notified to deliver the same to the consignees thereof." The U. S. Express Company have now no interest, and have made no claim on the defendant. 2. The defendant contended that " the consignee is the owner of the goods, and the defendant is responsible to him alone, for the reason that he is the owner." What the rights of the plaintiff may be in this action, do not depend upon

the question whether he would have a right of action for damages for the malfeasance or misfeasance of the carrier; and all the cases cited by the defendant were of that nature. The action against the carrier, for damages, is founded upon the contract, and not on property. (*Angell,* p. 504. *Edwards on Bailm.* 539. *Hawkins* v. *Hoffman,* 6 *Hill,* 586.) Trover has been maintained by persons having no pretense of title, as by a traveler, for a carpet-bag intrusted to him by a friend. (*Morand* v. *Portland,* 35 *Maine,* 55. *Kellogg* v. *Sewell,* 1 *Lansing,* 397.) By a laundress, for linen sent to her employer, and lost by the carrier. (*Freeman* v. *Birch,* 1 *Nev. & Man.* 420. *Joseph* v. *Knox,* 3 *Camp.* 320.) Ellenborough J. "To the plaintiff, from whom the consideration moved, and to whom the promise is made, the defendant is liable for the non-delivery of the goods. The plaintiff will hold the sum received as a trustee for the real owner." In such cases the court hold that the plaintiff has a beneficial interest in the performance of the contract.

In this case the consignee was James K. Martin; the package was directed to him, and to him it was to be delivered by the defendant. It is manifest that he had no interest in the package. The letter of instructions of John White to the plaintiff, was: "I want you to get our money as soon as possible, and send to Capt. James K. Martin, Bunton House, Terre Haute, Indiana, and he will fetch it to us." As between the consignor and consignee, if the question of title can be raised, who has the better right? Capt. Martin refuses to take the package, but the defendants say he must or he may take, and therefore they can keep it for themselves. The defendants are not liable to the Whites; they have discharged their whole duty to the Whites; nor is there any privity between the defendants and the Whites; the plaintiff retained the bill of lading, the evidence of title. (*Joseph* v. *Knox,* 3 *Camp.* 320.) 3. That if goods are ordered to be

sent by a carrier, though no particular carrier is named, "the moment the goods are delivered to the carrier, it operates as a delivery to the consignee, and the whole property vests in him." As between vendor and purchaser, title passes, but this does not concern the carrier when the consignee refuses to take the goods. When a defendant sets up the title of a third person, he must show some claim, title, or interest in himself derived from such third person. The consignor is entitled to a return, and holds the goods for his own indemnity, and as trustee for the consignee; or the carrier may put the goods in store and discharge his liability, and sue the consignor for the freight. When the consignee refuses the goods, denies the privity, repudiates the carriage, the ordinary principles of estoppel, as between bailor and bailee, apply; and upon being sued by the consignor, he cannot set up the title of a third person. The duty and responsibility of the defendant as carrier has ended, and he is now nothing more than an intruder between the parties between whom the confidence and trust reposes. To allow a depositary to set up the title of another who makes no claim, would enable a depositary to keep for himself that which he does not claim any title to, whatever. The package was delivered upon a special trust, to wit, to deliver to the consignee; the trust fails, the package necessarily reverts to the plaintiff. The simple consignment of goods, unexplained, merely shows that the consignee is the authorized person to receive the goods. (*Conard* v. *Atlantic Ins. Co.*, 1 *Peters*, 444.)

II. When the consignee does not name the carrier, or when the consignee is not bound to receive the goods, the right of action for a loss is with the consignor. In this case the Whites did not name the carrier, (only one of them wrote;) nor were they bound to receive the package; the account between the parties is unadjusted. Besides this, the contract to carry was made by the plaintiff

in his own behalf, and he took the bill of lading and retained it. The defendants undertook to carry for the plaintiff. (*Angell on Carriers*, §§ 498 *to* 503.)

III. Money collected by an agent belongs to him; charged with a trust on behalf of his principal. (*Chapman v. White*, 6 *N. Y.* 412. *Dunlap Paley Agency*, p. 90, *and notes*.) The delivery of the package to the defendant was an attempt to discharge that trust, but failed. The Whites employed the plaintiff and confided in him, and he is responsible to them. (*Dunlap*, p. 363.) It is not for the defendant to thrust itself between the parties and constitute itself a trustee, and leave the plaintiff to the risk of an action by the Whites. The plaintiff has a right to revoke the contract and demand back the package.

IV. After the carriage of the goods is ended, it is immaterial who brings the action, a recovery by one is a bar to the other, and if both bring an action the defendant may interplead. (*Smith v. James*, 7 *Cowen*, 328. *Green v. Clarke*, 12 *N. Y.* 351, 384.)

V. Irrespective of any other consideration, and on the supposition that the consignee is the owner, and that the contract was made for him, the plaintiff can maintain the action, under section 113 of the Code, as the trustee of an express trust, who is defined to be one with whom, or in whose name, a contract is made for the benefit of another. (*Considerant v. Brisbane*, 22 *N. Y.* 389. *Grinnell v. Smith*, 2 *Sandf.* 706. *Minturn v. Main*, 7 *N. Y.* 224. *Bogart v. O'Regan*, 1 *E. D. Smith*, 590. *Story on Agency*, §§ 112, 161, 162, 393.)

*Hooper C. Van Vorst*, for the respondent.

I. The plaintiff has no property, general or special, in the package in question, and has no status to maintain this action for a claim and delivery of the same. The money in the package and the "discharge papers" belonged to the Whites, discharged soldiers from the United States

Thompson *v.* Fargo.

army. The plaintiff has no title, as owner, to the contents of the package, and no claim or lien thereon of any name or nature. The allegation in the complaint that the package is the property of the plaintiff is untrue. The plaintiff never had any title to the same. The discharge papers belonged to the Whites, as their evidence of release from the service of the United States. The money was received as their back pay, in pursuance of their instructions to the plaintiff. The plaintiff has no lien on the package in question. His charges for his services in the matter were all deducted before he delivered the package to the United States Express Company.

II. The only duty the plaintiff had to perform in the matter was to collect the money and forward it with the "discharge papers" to the Whites. The plaintiff having been paid his commissions for that service, has no lien on, or property in, this money or the "discharge papers," and could have no right again to take the property into his possession, and subject it to further charges, or to mingle it with his own property, and thus put it in jeopardy. The intrusion of this plaintiff, after having forwarded the money and discharge papers, as directed, to the owners, is well calculated to raise the presumption that his motive is not beneficial to the Whites, but to himself; especially as it appears that the property is in the hands of a solvent party ready and able to respond. The money was safe in the hands of a responsible party as bailees for the Whites. It was where the law properly consigns it, under the facts. The plaintiff seeks to impose upon this fund the expenses of a suit, and probably to confiscate the remainder to himself. He is moved by no duty to the consignees; nor is retained by them to bring this suit. He moves in opposition to their interests, claiming himself as owner.

III. The defendant having received the package in question from the United States Express Company, and having given a receipt to that company therefor, and having made

an engagement in respect thereto with it, is answerable only to the actual owner of the property, or to that company, for the package, or its duty in the premises. The receipt which the United States Express company holds, contains the terms of the engagement of the defendant with respect to the subject matter. Upon that engagement, this defendant is liable to the United States Express Company. The plaintiff has not been subrogated to the rights and remedies of that company; nor does he sue in its interest or that of the Whites. He is proceeding for himself. There is no privity between the plaintiff and the defendant. Should the plaintiff succeed in this action, it leaves still outstanding the contract between this defendant and the United States Express Company, and upon which this defendant is liable to that company, and also to the claim of the Whites.

IV. The defendant is a common carrier, and received the package in question in the line of its duty as such. A common carrier, being engaged in a public employment, is subject to peculiar duties and great responsibilities. In the way of his business, the carrier is obliged to recognize, and is governed by, certain well established and clearly recognized rules and presumptions, chief amongst which, and fundamental, is the presumption that the consignee is the owner of the goods. That the consignee is the presumptive owner, and that the carrier must look to the consignee for instructions as to the delivery of the article carried, has been decided in all the cases brought before this court. (*Ang. on Car.* § 497. *Everett* v. *Saltus,* 15 *Wend.* 475.) The consignee of the property is, in law, presumed to be the owner. (*Fitzhugh* v. *Wiman,* 5 *Seld.* 562. *Sweet* v. *Barney,* 23 *N. Y.* 335. *Platt* v. *Wells,* 2 *Robertson,* 101.) When the package reaches the carrier, he is to look to the consignee only. If the package had been lost in its transit to Terre Haute, the plaintiff would not have entertained any idea of suing

for it. Nor could he have maintained an action for the loss. The consignee is the party to sue. The carrier must be liable to one party or the other. It is illogical to suppose that two persons claiming separately to be the owners could each maintain successfully an action for the same property. When goods are delivered to a carrier on behalf of the consignee, and are placed at his disposal, the property in the goods becomes immediately vested in him, and he, and not the consignor, is to maintain an action for the same against the carrier in cases of loss or conversion, or refusal to deliver. (*Ang. on Carriers*, § 497. *Arbuckle* v. *Thompson*, 37 *Penn.* 170.) If a tradesman order goods to be sent by a carrier, though he does name any particular one, the moment the goods are delivered to the carrier it operates as a delivery to the purchaser; the whole property immediately vests in him; he alone can bring any action for the goods. The only exception is the traders' right of stoppage in *transitu*. (*Dutton* v. *Solomonson*, 3 *B. & P.* 584. *Dawes* v. *Peck*, 8 *Durn & E.* 330. *Madison* v. *Whitesel*, 11 *Ind.* 55.)

V. But in this case the legal presumption, arising from the consignment, that the consignee is the owner, is in accord with the real facts. For the Whites, the consignees, were the actual owners of the package in question, and of its contents—the money and their discharge papers—and to whom the defendant is responsible for the package in question. Had the Whites died, even during the period the property was in transit, or afterward, the plaintiff is remitted to no claim or right to the property; it belongs to the legatees or legal representatives of the deceased, who alone, under such latter facts, would be entitled to receive or sue for it.

VI. Where the goods have been taken to the place of destination, and the consignee is absent, or on inquiry cannot be found, the duty of the carrier is not to return the goods to the consignor; nor is the carrier absolved from

all responsibility; he is still bound to make efforts to place them in the hands of the consignee, and when these efforts are ineffectual, to take care of the property for the owner, by holding them himself, or by lodging them with some suitable and responsible person for him, and then such person becomes bailee for the owner of the goods. (*Ostrander* v. *Brown,* 15 *John.* 39. *Fisk* v. *Newton,* 1 *Denio,* 45. *Stone* v. *Waitt,* 31 *Maine,* 409. 2 *Redfield,* " *Common Carriers,*" *ch.* 26, § 175, *pp.* 16, 18. *Ang. on Car. to same effect,* § 291.)

If the consignee cannot be found, the carrier is not legally bound to notify the consignor of that fact; his legal duty is to take care of them until they are placed in the hands of the true owner. (*Williams* v. *Holland,* 22 *How. Pr.* 137. *Hudson* v. *Baxendale,* 2 *Hurl. & Norm. Exch.* 575.) In *Hamilton* v. *Nickerson,* (11 *Allen,* 308,) it was held that when a carrier has obtained the custody of goods he may retain the same until he can deliver them to the consignee or owner, if he choose to do so ; or he may, if the owner cannot be found, store them either for himself or the owner. And when the goods are so stored, they belong to the consignee and owner; and under such circumstances, after being once stored, the carrier could never make any claim again to them, should no owner appear.

VII. The referee erred in deciding that if the consignee could not be found, a new contract arose to return the property to the consignor. It is submitted that no case can be found to justify any such rule. But that the same is in opposition to the whole current of authority on the subject. The referee expresses himself with hesitation, and acknowledges his doubt about the correctness of his own decision. And he may well do so. The "single authority," by which the referee confesses his proposition to be supported, is *Angell on Carriers.* (*See Angell on Carriers,* § 502.) But on an examination it will be found that this author founds his doctrine of an "implied contract" to

return to the consignor, upon the sole fact that " it should appear that there is no such person as the one to whom the goods are addressed." Such fact does not appear in this case, but on the other hand, it clearly appears that there were such persons as the Whites. The only relation the plaintiff had to the package was through them. But *Angell*, to support the dictum on that subject contained in his work, refers to the case of *Stephenson* v. *Hart*, (1 *M. & Payne*, 357.) The case cited does not support *Angell*. In the case referred to, the vendor of goods had been induced by the false representations of one West, a felon, to part with the possession of his merchandise. He was deceived by the felon into delivering the goods to a carrier, directed to the felon, at Great Winchester street, London. The goods were taken by the carrier to this place, but no such person as West could be found. The carrier then held the goods for a week, and then sent them to St. Albans, and delivered them to a person by the name of West, there. The consignor in that case was allowed to recover of the carrier the value of the goods. But the grounds upon which the decision in that case rested, were, that the consignor was the owner of the goods; that he did not part with the ownership. That the consignee or a felon gained no title by the delivery to the carrier, as the same was procured by false representations, amounting to felony. And that the delivery to the consignee, at St. Albans, was not a good delivery. But none of the elements exist in the case at bar. Here the plaintiff never was, and is not, the owner of the property in question, but the consignees are. And it was forwarded to them by their directions, and they only are entitled to the same. In this case, there are in existence no elements out of which could be constructed a new contract to return the goods to the consignor. The carrier never so agreed. And there is nothing out of which any such undertaking could be implied. The element of owner-

ship in the chattel in the consignor, and of any knowledge of such ownership in him, on the part of the carrier, is wanting; therefore, no such implied contract can arise. In fact no "implied contract" can ever arise, except there be facts in existence to justify it, and sufficient to impose upon a party such an obligation. If a carrier is not obliged to notify a consignor that the consignee cannot be found, he is not certainly obliged to return the article to him.

VIII. The plaintiff has no interest in the cause of action, and therefore cannot maintain this suit. Every action must be brought in the name of the real party in interest. (*Code*, § 3.) In order to sustain a suit against a carrier for damages to, or loss of, goods, it must appear that the goods belonged to the plaintiff at the time of the injury. (*Law* v. *Hatcher*, 4 *Black*, 364.) It is quite clear that this plaintiff could not maintain such an action, in case the package had been burned or destroyed. It must have been brought in the name of the owners. The plaintiff's consignment to the Whites puts it out of his power to act further, in the premises. (*Dows* v. *Green*, 16 *Barb.* 72. *Smith's Mercantile Law*, 366, 3d ed. *Freeman* v. *Birch*, 1 *Nev. & Man.* 420.) In this last case, cited by the plaintiff, the party sending a "laundress" had a "special property in the goods;" upon that ground only was she allowed to sue. In *Swain* v. *Shepperd*, (1 *Mood. & R.* 224,) also cited by the plaintiff, it was held that the goods, the subject of the action, being sent by a merchant "only for approval," no title passed until the consignee had received and adopted the goods. That, we do not dispute. In addition, this is substantially an action of replevin, the delivery to the plaintiff of the property in question, being, as is alleged in the complaint, a "certain package of money." Such an action can only be maintained by a person who has a general or special property in the property. (*Code*, § 207.) This plaintiff has no "spe-

cial" or "general property." The attempt to make the plaintiff a trustee of an express trust is absurd, and exhibits the weakness of the plaintiff's position. The relation of the plaintiff to the money is ended; he collected it for the Whites, and forwarded it to them as they directed; that ends his business. The express company is the depositary or trustee for the Whites. They hold the package for them, and have publicly advertised that they so hold it, and are liable to them only. This claim of the plaintiff to act for the Whites is an after-thought. He claims to sue as the owner of the package; he is now prosecuting for this money to appropriate it to his own use, in fraud of the rights of the Whites—the true ōwners. And if he succeeds in this action, it will be a success in the interest of what is wrong. In his letter to the U. S. Express Company of September 19, 1867, he forbids a delivery to the Whites, and distinctly claims as owner. Would a trustee do this? This letter was written two years after the plaintiff had delivered the package for carriage, and the same being held at the time by the defendants as bailees for the Whites, and for them, and to whom they are accountable.

IX. It is clear, therefore, that the plaintiff is not entitled to recover in this action, upon any principle. That under no circumstances could the defendant be called upon to return the property in question to any other person than the Whites; and that it owes no duty to any person other than the Whites or the U. S. Express Company, and that the judgment should be reversed, and a new trial ordered.

*By the Court*, CARDOZO, J. The plaintiff in this action became possessed of the money by virtue of his appointment as attorney for Messrs. White, under power of attorney made by them, dated July 6, 1865. When he collected the money he became debtor to them for the

Holden *v.* Clancy.

amount. They directed him to send the amount, less his charges, to Captain Martin, at Terre Haute. No particular method of conveyance was designated. As the Whites had no claim to any particular money, when the plaintiff delivered the treasury notes to the United States Express Company, he simply delivered his own property to be forwarded to discharge his indebtedness to the Whites. Upon this statement, it is plain that both the plaintiff and the Whites had such a title to the property that an action might be maintained by either of them, and a recovery by either would bar an action by the other. (*Smith* v. *James*, 7 *Cowen*, 328. *Green* v. *Clarke*, 12 *N. Y.* 343.)

I think the judgment should be affirmed.

Judgment affirmed.

[FIRST DEPARTMENT, GENERAL TERM, at New York, February 7, 1871. *Ingraham*, P. J., and *Cardozo* and *Geo. G. Barnard*, Justices.]